UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:14-CV-854-TBR

STATE FARM FIRE AND CASUALTY
COMPANY                                                                                              PLAINTIFF

v.

JAMES R. ESTES, *et al.*                                                                    DEFENDANTS

**MEMORANDUM OPINION**

When she was a young girl, Ekaterina Estes was sexually abused. The abuse occurred from 2001 to 2004. In February 2010, her grandfather, James Estes, pled guilty to abusing Ekaterina during that time period. When she reached adulthood, Ekaterina brought suit against James and her grandmother, Clara Estes. She also added the State Farm Fire and Casualty Company ("State Farm") because, since December 2007, James and Clara had a liability insurance policy (the "Policy") for their home—the home where James abused Ekaterina. State Farm seeks a declaratory judgment (DN 11) that it need not indemnify nor defend James and Clara. After careful consideration, the Court determines that State Farm is correct.

I.

In January 2010 James Estes was charged in Kentucky state court with committing sexual abuse in the first degree against his granddaughter, Ekaterina Estes, who was then a minor. Ekaterina was younger than twelve, an aggravating factor that raised the crime to a Class C felony. James pled guilty one month later. He supported his plea with an admission that he had sexual contact with Ekaterina between February 2001 and February 2004. In exchange for his plea, the prosecutors recommended that he receive a five-year sentence, probated for five years. The presiding judge approved the deal. The probation was followed with a three-year period of

supervised sex offender conditional discharge as well as other requirements, including that James not have any contact with his granddaughter.

Three years later, Eileen Estes, Ekaterina's mother, filed suit in Jefferson Circuit Court against James for willful sexual abuse. The complaint also alleged that Clara failed to properly supervise and breached her duty to care and protect for Ekaterina. When Ekaterina turned 18, Eileen dropped her suit and Ekaterina filed the case in her name. Along with her grandparents, Ekaterina also sued their homeowners' insurer, State Auto Property and Casualty Insurance Company ("State Auto"), as well as "unknown insurance companies." (DN 23-2, Page ID# 401). State Auto filed a declaratory judgment action in October 2013 in this Court. Though State Auto acknowledged that its homeowners' insurance policy was in effect during the alleged harms, it argued that exceptions to its policy applied. This Court agreed. Likewise, State Farm—the "unknown insurance company"—filed this declaratory judgment action in December 2014. It argues that the Policy does not cover the harms done to Ekaterina for three primary reasons: (1) her injuries did not occur during the effective dates of the Policy; (2) even if the injuries happened during the coverage period, they are still not covered because they were not caused by an "occurrence" or accident; and (3) as a final alternative, the intentional acts exclusion bars coverage.

*The Policy*. In October 2007 James and Clara applied for a "condominium unitowners" insurance policy for their residence in Louisville, Kentucky. State Farm issued the Policy; it became effective in December 2007 for a one-year period. It still remains in effect. James and Clara owned no State Farm policies prior to December 2007. The Policy provides liability coverage for claims brought against an insured alleging "bodily injury . . . caused by an occurrence." An "occurrence" is defined as "an accident, including exposure to conditions,

which results in: . . . bodily injury . . . during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence." The Policy covers only injury "which occurs during the period this policy is in effect." And the Policy explicitly excludes any bodily injury "which is either expected or intended by the insured; or . . . which is the result of willful and malicious acts of the insured[.]"

II.

Kentucky law requires insurers to defend and indemnify under liability policies. Insurers must defend if any of the allegations potentially, possibly, or might be covered. *Aetna Cas. & Surety Co. v. Comm.*, 179 S.W.3d 830, 841 (Ky. 2005). But that duty ends if the insurer can establish in fact that the policy does not cover the claim. *Ky. Assoc. of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 635 (Ky. 2005). Any unambiguous terms of insurance policies that are not unreasonable are enforceable as written. *See Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 524 (Ky. 1987). If any exclusion applies, there should be no coverage. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries*, 82 S.W.3d 869, 874 (Ky. 2002).

III.

State Farm's primary argument is that the harms done to Ekaterina, which occurred from 2001 to 2004, are outside the Policy's coverage period because the Policy did not become effective until 2007. In the alternative, it argues both that Ekaterina's allegations do not amount to "occurrences" as the Policy defines the terms, and that the intentional acts exclusion bars coverage. The Defendants oppose the motion, albeit for differing reasons. Because the Court agrees that the harm occurred outside the coverage period, it agrees that declaratory judgment in State Farm's favor is appropriate.

A.

Insurance companies must defend insureds when "*the language of the complaint* would bring it within the policy coverage regardless of the merits of the action." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279 (Ky. 1991) (citation omitted). And the "determination of whether a defense is required must be made at the outset of the litigation." *Id.* (citation omitted). Based on Ekaterina's complaint, the harms she complains of did not fall within the Policy's coverage.

*James Estes*. Ekaterina's state court complaint alleges that James sexually abused her from 2001 to 2004. She does claim that she continued to suffer other harms—like psychological damages and loss of enjoyment of life—after 2004, including after the Policy became effective. But her harms all fall outside the coverage period. In separate sections, the Policy limits its coverage to bodily injury "during the policy period" and to bodily injury "which occurs during the period this policy is in effect." (DN 11-1, PageID #85). Here, it is important to distinguish an "occurrence policy," like this Policy, from "claims-made policies." The latter "are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches." *C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.*, No. 5:13-CV-00173, 2014 WL 811654, at *6 (W.D. Ky. Feb. 28, 2014) (citations and internal quotations omitted). This Policy, though, is an occurrence policy: It "provides coverage for incidents that *occur* during the specified period regardless of when the claim is made." *Id.* (emphasis in original). As Ekaterina's complaint alleges that the basis of her claims is James' sexual abuse from 2001 to 2004, the harm occurred before the Policy came into effect.

James contends that because Ekaterina stated that her mental anguish continued through 2009, the Court should treat this as one extended occurrence that fell during the coverage period.

4

Yet the complaint specifically identifies 2001 to 2004 as the period James abused Ekaterina; the extension beyond 2004, into 2009, is discussed only in Count II, which is aimed at Clara rather than James.  (DN 11-3, PageID #97-98).  In her response to State Farm's motion, though, Ekaterina's counsel noted that Ekaterina "has since realized that the sexual abuse continued past where she originally thought, into 2008 and 2009, as her therapy has brought these occurrences to light."  (DN 32, PageID #567).  The claim does not appear in a sworn affidavit from Ekaterina or a treating therapist but appears only in briefings.  Even if it were sworn to, it is unclear whether it would carry any weight: The language of the complaint is what determines whether the Policy covers the claim, *see James Graham Brown Foundation*, 814 S.W.2d at 279, not arguments made in briefing.  Ekaterina's briefings implicitly concede that James' conduct falls outside the Policy's coverage.  When discussing the time-bar, her counsel wrote: "the claims against James and Clara Estes are distinct and those relating to Mrs. Estes are within the policy period."  (DN 32, PageID #567).  Indeed, the focus of Ekaterina's response is arguing for State Farm's duty to Clara.  All of these factors taken together, and based on the probative evidence before the Court, the Court concludes that James' acts were outside the Policy's coverage period.  State Farm owes him no duty.[1]

   *Clara Estes*.  Clara's position is more nuanced.  Ekaterina argues that Clara failed to properly supervise Ekaterina and failed to protect her from the sexual abuse.  The complaint further indicates that Clara invited Ekaterina to Clara's home between 2001 and 2009, which subjected her to the harm and was later a trigger for psychological anguish because it reminded Ekaterina of the abuse.  (DN 11-3, PageID #98).

---

[1] James' counsel also believes that the Court should allow discovery into his mental state.  Because of health problems, James' counsel doubts James could have intentionally sexually abused his granddaughter.  The Court feels pursuing this discovery is unnecessary.  For one, none of James' counsel's arguments indicate James' mental state was impaired *at the time* of the assault he pled guilty to.  As well, because the incidents occurred outside the Policy's coverage, further inquiry is unnecessary.

5

Though the Court does not doubt that routinely visiting the home where she was abused triggered mental anguish for Ekaterina, it is unconvinced that State Farm must defend Clara from these allegations. The Policy covers "bodily injury," but it expressly excludes from the definition of bodily injury any "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury *unless it arises out of actual physical injury to some person*." (DN 11-11, PageID #144). State Farm argues that recent Sixth Circuit case law interpreting insurance contracts excluded from "physical injury" any sexual abuse that did not cause physical damage, like lacerations or bruises. *See State Farm Fire & Cas.Co. v. Wilson*, 153 F. App'x. 952 (6th Cir. 2005). It concludes that because there is no allegation that the emotional harms done after 2007 were caused by a bodily injury, the Court should declare it has no duty to Clara. The Court agrees with the outcome but chooses a simpler path. The Court does not doubt that Ekaterina suffered emotional anguish when she had to visit James and Clara's home and was reminded of the abuse she suffered. And the Court understands that those emotional harms were connected to the physical injuries Ekaterina sustained at her grandfather's hand. Those physical injuries, though, occurred years before the Policy came into effect. To the Court, it seems that if the Policy does not cover the physical harm, then there is no bridge that would bring the later-suffered emotional harm under the Policy's umbrella.

B.

Even if Ekaterina's abuse occurred during the Policy period, other issues preclude State Farm from having to defend or indemnify James. First, the Policy provides coverage for bodily injury caused by an "occurrence." James' acts were not occurrences. The Policy defines "occurrence" to mean "an accident." (DN 11-11, PageID #145). Kentucky has defined "accident" as "an unfortunate consequence which befalls an actor through his inattention,

6

carelessness or perhaps for no explicable reason at all. The result is not a product of desire and is perforce accidental." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986). James' acts were not accidental. Kentucky courts have been unequivocal on this point: "it is inconceivable that a criminal act of sexual molestation, the essence of which is the gratification of sexual desire, could possibly be an 'occurrence' for purposes of insurance coverage." *Thompson v. West Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. App. 1992).

The only real protest that James' counsel puts forth is an argument that James did not subjectively intend to commit sexual abuse because of his "fragile mental and health condition." (DN 24, PageID #486). The only support for this contention is a March 2014 affidavit from Clara stating that James has suffered strokes, dementia, and shows early signs of Parkinson's. (DN 24-3, PageID #526-28). There is no indication, however, that James was suffering these ailments ten to thirteen years prior to swearing of the affidavit. Further, the Court notes that James pled guilty to the criminal charges against him. The Court has been presented with no evidence calling into question James' mental state when he committed the sexual abuse and then pled guilty to committing the abuse. His actions were not an occurrence; the Policy does not cover him.

As well, the Policy excludes from coverage any bodily injury "(1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured." (DN 24-1, PageID #512). James' acts fall under the exclusion, despite his counsel's attempts to cast doubt on whether his actions were intentional. Again, James pled guilty to committing sexual abuse against Ekaterina. In Kentucky, courts recognize "that intent may be inferred as a matter of law in certain circumstances." *Parsley v. Kentucky Farm Bureau Mut. Ins. Co.*, 32 S.W.3d 103, 106 (Ky. App. 2000). This inference is based on the idea that some

actions—sexual molestation expressly included—are "so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law." *Thompson*, 839 S.W.2d at 581. James' behavior can be inferred as intentional acts, and so for three distinct reasons the Policy does not cover him.

C.

When it comes to alternate theories for denying or approving State Farm's duty to defend, Clara's position is less clear. Because the claims against her are styled as failures of the duties to supervise and protect, her intent and its effect on this case is a closer question. That is, because the claims against her are styled as traditional negligence claims, it is less clear that she had any intent to cause bodily injury to Ekaterina or that the Court can infer such intent from these circumstances. State Farm argues that although the claims against Clara are styled as negligence actions, the underlying language of the complaint belies a higher level of intent. Indeed, Ekaterina's state court complaint alleged that Clara was negligent "and/or *compliant* in the sexual and physical abuse" and "knew or should have known" of her husband's acts yet "did nothing to prevent the physical, psychological and sexual abuse of [Ekaterina] by defendant James R. Estes." (DN 33, PageID #579) (emphasis added).

The language of the complaint may trigger a duty to defend. However, as noted earlier, the Policy does not cover the physical harm, if any, attributable to Clara's actions. The Policy covered events which occurred after 2007. The claims against Clara are for negligent supervision of James during 2001-2004. There is no allegation of physical abuse after that time. The only allegation that allowing Ekaterina to be in the presence of James after these dates added to her emotional injury was a continuation of acts that occurred in 2001-2004. State Farm has no duty to defend those claims because these acts did not while State Farm's Policy was in effect.

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff State Farm's Motion for Declaratory Judgment (DN 11) is GRANTED.  State Farm is under no duty to defend or indemnify Defendants James and Clara Estes.

IT IS FURTHER ORDERED that Defendant Clara Estes' Cross-Motion for Summary Judgment (DN 23) is DENIED as MOOT.

A separate judgment and order shall issue.


cc:     Counsel of Record